UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERRY KERR,<br><br>                Plaintiff,<br><br>v.<br><br>AMERICAN HOME MORTGAGE SERVICING, INC., and DOES 1-10,<br><br>                Defendants. | Case No. 4:11-cv-00134-EJL-LMB<br><br>**REPORT AND RECOMMENDANTION** |

This action is before the Court on Defendant's Motion for Summary Judgment (Dkt. 28), Motion to Strike (Dkt. 31), and Motion for Sanctions (Dkt. 40). Also pending is Plaintiff's Notice of Attorney Misconduct (Dkt. 27) and Motion for Restraining Order (Dkt. 35). Having reviewed the record, Plaintiff's amended complaint and the parties' briefs, the Court enters the following order and report and recommendation.

## BACKGROUND[1]

This case involves the validity of a proposed non-judicial foreclosure sale of property owned by Plaintiff Terry Kerr and his son, Dennis Kerr ("The Kerrs"), located at 2140 Belmont Ave., in Twin Falls, Idaho. Plaintiff is proceeding without the assistance of counsel.

---

[1] The following facts are taken from the Second Amended Complaint (Dkt. 20), and documents of public record attached to Defendants' Motion for Summary Judgment of which the Court takes judicial notice.

In June 2006, the Kerrs obtained a cash-out refinance loan in the amount of $210,900.  In August 2008, the Kerrs stopped making their monthly payment, defaulting on their loan obligation.  Thus, in October 2009, Defendant began non-judicial foreclosure proceedings.  However, prior to foreclosing, the Kerrs entered into a Loan Modification Agreement with Defendant, effective June 1, 2010.  Under the agreement, the first payment of $1446.72$^2$ was due July 1, 2010.  The Kerrs failed to make the first payment and have made no payments thereafter.  In sum, the Kerrs have not made a payment on the loan since August 2008.  Thus, on October 1, 2009, Defendant again initiated non-judicial foreclosure proceedings.

In response to the foreclosure proceedings, on February 24, 2011, Plaintiff filed suit in state district court, thereby stopping those proceedings.  On April 1, 2011, the action was removed to this Court.

From a careful review of his Complaint, it appears Plaintiff seeks to enjoin the pending foreclosure on the ground that it is in violation of the Service Members Civil Relief Act ("SCRA").  Plaintiff claims that Defendant altered the underlying loan agreement, violated an implied covenant of good faith and fair dealing, and breach of contract.  Plaintiff also alleges that Defendant's foreclosure is motivated by racial animus because Plaintiff's son and his son's mother are both African American.

---

[2] In addition to the monthly payment, the agreement included a "Deferred Amount" of $3,151.39.

# REPORT

## A.     Attorney Misconduct Allegation

Plaintiff filed Notice (Dkt. 27) with the Court claiming that a "mole" informed him that Defendant's attorney, Cynthia Lin Yee-Wallace[3], approached Dona Miller and requested that Miller "lie about the wrongful quit claim, and then use the like and false wrongful quit claim to get the case dismissed . . ." (Notice, Dkt. 27 at 2).  Plaintiff continues that Yee-Wallace is paying various criminals to steal Plaintiff's mail, poison his wife and son, beat his son at his elementary school, bench Plaintiff's other son from playing basketball on the high school team, and generally harass Plaintiff.  In the same vein, Plaintiff later filed a rambling and unintelligible Motion for Restraining Order, appearing to argue that Defendant, defense counsel, local police, various school officials and other community members were all part of the "Mormon Mafia," victimizing Plaintiff and his family.

Defendant denies all of Plaintiff's assertions as having no basis in fact, and requests that the Notice be stricken and the Court sanction Plaintiff and order him to pay attorney fees and costs incurred in responding to the frivolous notice. (Dkt. 31),

In the Court's well-formed view, all of Plaintiff's allegations, whether contained in the Notice or the Motion for Restraining Order, are irrelevant, inflammatory, baseless, and have no bearing on underlying case whatsoever. It appears to the Court that the only

---

[3] Subsequent to Plaintiff's notice filing, Yee-Wallace changed employers, and has likewise withdrawn from representing Defendant.

conceivable purposes those filings serve are to harass Defendant and its counsel, delay resolution of this action, and increase litigation costs. Accordingly, because Plaintiff has failed to establish any reason to warrant the entry of a restraining order against either Defendant or its attorneys, Plaintiff's Motion should be denied.

Conversely, the Court concludes that Defendant's Motion to Strike (Dkt. 31), and Motion for Sanctions (Dkt. 40) are well founded. Plaintiff's Notice and Motion for Restraining Order are patently frivolous and are without a legal or factual basis. Accordingly, it is recommended that the District Court strike the Notice and award Defendant reasonable attorney's fees incurred in responding to Plaintiff's Notice and Motion for Restraining Order.

**B.     Summary Judgment**

**1.     Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no *genuine* dispute as to any *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). A court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). A court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

In addressing and ruling on a motion for summary judgment, a court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. While all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

### 2. Analysis

In the Second Amended Complaint, Plaintiff asserts five claims: 1) Defendants altered the loan agreement; 2) Defendants attempted foreclosure violated the SCRA; 3)

Defendants engaged Plaintiff in bad faith/breach of contract; 4) Defendants attempted to foreclose was based on racial animus; and 5) Defendants libeled/slandered Plaintiff.

### a. Altered Loan Agreement Allegation

Plaintiff alleges Defendants altered the loan agreement by increasing the first payment from $1,446 to $6,134. However, the only evidence Plaintiff has submitted to support this allegation directly undermines this claim. Specifically, Plaintiff has included the August 2010 billing statement that shows that the monthly payment was, as he claims, $1,446. Further, the statement shows that Plaintiff is past due by one payment, and that the loan servicer has also assessed late charges. There is simply no evidence to support Plaintiff's contention that the loan agreement was altered. In fact, the opposite is true. Thus, this claim should be dismissed.

This recommendation also applies to Plaintiff's third claim for relief, based on breach of contract. While Plaintiff argues that Defendant breached the contract and/or engaged Plaintiff in bad faith, the only evidence contained in the record shows that it was Plaintiff who failed to perform under the contract by not paying his mortgage payments. The record is clear that Plaintiff, in choosing to not to make those payments, did not perform his obligations under the contract. Plaintiff's performance is a required element to his third claim for relief for breach of contract and his failure to perform requires dismissal.

It is well established that "[w]hen one party materially breaches an agreement, the other party's performance is excused." *Peterson v. Shore*, 197 P.3d 789, 796 (Idaho Ct. App. 2008). In this action, the only evidence in the court record shows that Plaintiff failed to make even the first payment that was due July 2010. Accordingly, Plaintiff's third claim for relief should also be dismissed.

### b. Violation of the SCRA Claim

Plaintiff's second claim for relief is that Defendants' foreclosure proceedings violated the SCRA because when those proceedings were initiated Plaintiff's son was overseas in the military on active duty. Defendants argue that SCRA does not apply to Plaintiff because Plaintiff's son, Dennis Kerr, was enlisted in the Army in 2002, *before* they entered into the original loan agreement with Defendant in 2006. The SCRA states, in part:

> This section applies only to an obligation on real or personal property owned by a servicemember that—
>
> (1) Originated *before the period of the servicememeber's military service* and for which the servicememeber is still obligated . . . .

50 U.S.C. § 533 (emphasis added). Thus, it is well-settled law that "the SCRA only applies to contracts entered into before military service." *Coward v. JP Morgan Chase Bank*, Slip Op., 2012 WL 2263359, *5 (E.D. Cal. 2012). The record in front of the court is clear that Dennis Kerr enlisted in the Army in 2002 and obtained the original loan nearly four years later, in 2006. Because he was already an active duty member of the

Army at the time he obtained the loan, the provisions of the SCRA do not prohibit Defendant's non-judicial foreclosure. Accordingly, Plaintiff's second claim for relief, arising under the SCRA, should also be dismissed.

### c. The Fair Debt Collection Practices Act Claim

Plaintiff's fourth claim alleges that Defendant violated the Fair Debt Collection Practices Act (FDCPA). Alternatively, Plaintiff appears to claim an equal protection violation on the basis that Defendant's attempted foreclosure "is a hate crime thing." This claim is based on the fact that when foreclosure proceedings began, a Notice of Trustee's Sale was sent to Plaintiff's mother, who was incorrectly addressed as the "spouse of Dennis Kerr." Plaintiff argues that the disclosure of the sale to his mother "amounts to illegal methods of collecting and processing [debts]."

In response, Defendants argue that this claim must fail because "it is well settled that foreclosure is not a 'debt collection' activity covered by the FDCPA." The Court agrees.

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA restricts debt collectors from making false or misleading representations or using

unfair collection methods. 15 U.S.C. § 1692(e)-(f). Debt collectors must also provide certain written information concerning the debt collection. 15 U.S.C. § 1692(g).

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

"The activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA." *Breedlove v. Wells Fargo Bank, N.A.*, 2010 WL 3000012, at *3 (D. Ariz. 2010) (quoting *Williams v. Countrywide Home Loans,* 504 F.Supp.2d 176, 190 (S.D.Tex.2007)); *see also, Izenberg v. ETS Servs., LLC,* 589 F.Supp.2d 1193, 1199 (C.D.Cal. 2008); *San Diego Home Solutions, Inc. v. Reconstruct Co.,* 2008 WL 5209972, at * 1 (S.D.Cal. 2008). Applied to these facts, Defendant is merely the servicer of Plaintiff's loan. *Id*. Defendant's status as loan servicers does not confer any liability under the FDCPA. *See Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985). Accordingly, dismissal of Plaintiff's fourth cause of action is appropriate because Plaintiff cannot sustain a claim for relief under the FDCPA.

It is noteworthy that as part of his FDCPA claim, Plaintiff asserts that Defendant's foreclosure action was motivated by racial animus and constitutes a hate crime. After a careful and thorough review of the court record, the only reasonable conclusion is that

this inflammatory assertion is baseless and wholly unsupported by the record.  No competent evidence exists anywhere in the record establishing that any of Defendant's actions took place because of Plaintiff's race, or that Defendant was even aware of Plaintiff's race. Thus, Plaintiff's claims of racial bias are not supported by the record and should be dismissed.

### d.  Libel and Defamation Claims

Plaintiff's final cause of action is that Defendant's foreclosure action "all was done to libel [and] slander the Plaintiff and any one he may know."  Plaintiff reasons that the foreclosure action caused him "humiliation, mental anguish, physical distress and financial grief …."

Under Idaho law, it is well-settled that in bringing "a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication."  *Clark v. The Spokesman-Review*, 144 Idaho 427, 430 (2007)(citing *Gough v. Tribune–Journal Co.,* 73 Idaho 173, 177 (1952)).  A defamatory statement is one "tending to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Weitz v. Green*, 148 Idaho 851, 862 (2010).  It is well-established Idaho law that a defamation action "will not lie where a statement . . . was made in good faith with probable cause for believing it." *Id.*

Here, Plaintiff cannot establish that any of the elements necessary for proceeding on a defamation claim can be met.  First, Plaintiff has not alleged that any non-public information about him was disclosed by Defendant. Second, any information communicated by Defendant related to the undisputed fact that Plaintiff failed to pay his mortgage payments.  Third, the disputed foreclosure in this case is currently on hold because of this litigation, and thus the property has not been foreclosed on, and thus he is not damaged.  Finally, the record before the Court makes it very clear that Plaintiff is in default of the loan agreement and as such, AHMSI is entitled to foreclose on the property. Any statements that may have been made by Defendant in executing non-judicial foreclosure proceedings, statements relating to Plaintiff's default, appear to be true, and thus were made in good faith.  Accordingly, Plaintiff's final claim for relief should also be dismissed.

### C.  Conclusion

For the reasons set forth above, the Court recommends that Defendant's Motion for Summary Judgment be granted.  Further, because the Court finds, and thus concludes, that Plaintiff has failed to state a claim upon which relief could be granted, the Court also recommends that Plaintiff's Motion for Restraining Order (Dkt. 35) be denied as moot.

### RECOMMENDATION

In accordance with the foregoing analysis, it is RECOMMENDED that:

1. Defendant's Motion for Sanctions (Dkt. 40) be GRANTED;

2. Defendant's Motion to Strike Notice of Bad Faith (Dkt. 31) be GRANTED;

3. Plaintiff's Motion for Restraining Order (Dkt. 35) be DENIED as MOOT;

4. Defendant's Motion for Summary Judgment (Dkt. 28) be GRANTED; and

5. Plaintiff's Second Amended Complaint (Dkt. 20) be DISMISSED with prejudice.

## OBJECTIONS

Written objections to this Report and Recommendation must be filed within fourteen days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, or as a result the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals may be waived. The parties are advised that this is a report and recommendation and not a final, appealable order, and thus no appeal can be taken from this report and recommendation.

Dated: **August 14, 2012**

Honorable Larry M. Boyle
United States Magistrate Judge